**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARTIN LUTHER ROGERS, Plaintiff, v. UMDNJ, etc., et al., Defendants. | Civil No. 10-1759 (JLL) **OPINION** |

**APPEARANCES**:

MARTIN LUTHER ROGERS, #405519, Pro Se
Northern State Prison
P.O. Box 2300
Newark, New Jersey 07114

**LINARES, District Judge**

Plaintiff Martin Luther Rogers seeks to file a complaint in forma pauperis pursuant to 28 U.S.C. § 1915. This Court will grant in forma pauperis status. As required by 28 U.S.C. § 1915(e)(2)(B), this Court has screened the Complaint for dismissal and, for the reasons set forth below, will dismiss the Complaint, without prejudice to the filing of an amended complaint if Plaintiff believes he can cure the deficiencies described in this Opinion.

## I. BACKGROUND

Plaintiff asserts violation of his Eighth Amendment rights by Dr. John Godinsky, Dr. John Hochberg, University of Medicine and Dentistry of the State of New Jersey ("UMDNJ"), University Behavioral Healthcare ("UBHC"), Correctional Healthcare, Correctional Medical Services ("CMS"), and various John Doe physicians. He asserts the following facts, which this

Court is required to regard as true for the purposes of this review. See Stevenson v. Carroll, 495 F. 3d 62, 66 (3d Cir. 2007). Plaintiff alleges that he has been a state sentenced inmate in the New Jersey prison system since 2000, and that on April 24, 2008, he was transferred from East Jersey State Prison to Northern State Prison, where he is currently confined. Plaintiff further asserts that by contract CMS provided medical care to New Jersey inmates prior to September 30, 2008, and UMDNJ provided medical care by contract after that date. Plaintiff asserts that he suffers from the following medical conditions: neoplasm malignant bone marrow of the lumbar spine, mild levoscoliosis of thoracic spine, back disorder, dermatophytosis of the foot, obesity, and high cholesterol. He asserts the following facts:

> 18. On or around January 16, 2008, Plaintiff received an MRI of his lumbar spine at St Francis Medical Center in Trenton, NJ. The findings of the MRI suggested hyperplastic vertebral bone marrow, however; the findings were nonspecific and further assessments were suggested by the very same physicians of St Francis Medical Center.
>
> 19. On or around August 8, 2008, Plaintiff had a medical follow-up medical appointment with defendant John Hochberg, M.D., in NSP's infirmary where pain medications were again renewed.
>
> 20. On or around September 4, 2008, Plaintiff, again, had an appointment with defendant, John Hochberg, M.D., and pain medications were renewed.
>
> 21. On October 27, 2008, Plaintiff was admitted to the institutional infirmary for serious back pain. Plaintiff remained under the care of defendants UMDNJ, UHBC, John Hochberg, M.D., and other staff . . . until October 31, 2008; upon being discharged and placed back into the prison general population.
>
> 22. On or around November 5th and 11th of 2008, Plaintiff had doctor appointments with defendants John Hochberg, M.D., and John Godinsky, M.D., for medical treatment.
>
> 23. Despite recommendations by medical consultants concerning the care and treatment to Plaintiff's serious back condition, defendants, and each of them failed to follow-up on the assessment recommendation.

> 24. On December 2, 2008 through March 18, 2010, Plaintiff had several medical visits with defendants John Godinsky, M.D., and John Does #1-7 in NSP infirmary where pain medications were renewed and blood samples were extracted.
>
> 25. Despite recommendations by medical consultants concerning the necessary care and treatment to Plaintiff's back, his failed trial of physical therapy, and the findings of high cholesterol in Plaintiff's blood, defendants, and each of them, failed to provide adequate medical care and filed to treat Plaintiff's serious medical needs.
>
> 26. Defendants and each of them have been deliberately indifferent . . by: (1) failing to follow-up on the recommendations of medical consultants concerning care and treatment; (2) allowing medical prescriptions to lapse; (3) allowing medical orders, restricting housing and other medical necessities to lapse and; (4) failing to take action when inmates filed Administrative grievances/complaints concerning their medical treatment and care.
>
> 27. Throughout all times pertinent, the defendants, and each of them, have been deliberately indifferent to Plaintiff's and all others similarly situated, serious medical needs.
>
> 28. The defendants, and each of them, failure to treat Plaintiff(s) conditions manifest a policy, custom or practice of defendants UMDNJ, UHBC, UCHC and CMS to withhold necessary care. The policy, custom and practices of the defendants are of a continuing, ongoing nature.
>
> 29. As a result of the defendants' deliberate indifference to Plaintiff's serious back and high cholesterol needs . . . , Plaintiff(s) have been subjected to gratuitous pain and suffering and mental trauma that serves no legitimate penological purpose and constitutes the gratuitous infliction of punishment, in violation of the Eighth Amendment as incorporated in the Due Process Clause of the Fourteenth Amendment.

(Docket Entry #1, pp. 5-7.)

For violation of his constitutional rights, Plaintiff seeks declaratory and injunctive relief, damages and costs. (Docket Entry #1, p. 8.)

## II. STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A. The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Id. A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).

The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of

> misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

The Third Circuit observed that Iqbal hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was applied to federal complaints before Twombly. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal and Twombly,

> a court must take three steps: First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Township, __ F. 3d __, 2010 WL 5071779 at *4 (3d Cir. Dec. 14, 2010); see also Fowler, 578 F.3d at 210-11 ("a complaint must do *more than allege the plaintiff's*

---

[1] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

*entitlement to relief.* A complaint has to "show" such an entitlement with its facts") (emphasis supplied).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). With these precepts in mind, the Court will determine whether any claim raised in the Complaint should be dismissed for failure to state a claim upon which relief may be granted.

**III. DISCUSSION**

Federal courts are courts of limited jurisdiction. See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884). "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986). A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

Plaintiff complains that defendants have been deliberately indifferent to his medical conditions. The Eighth Amendment's prohibition against cruel and unusual punishment obligates prison authorities to provide medical care to inmates. Estelle v. Gamble, 429 U.S. 97, 103 (1976); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state a cognizable medical claim, inmates must "demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious." Rouse, 182 F.3d at 197. A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citations omitted).

“Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official’s own individual actions, has violated the Constitution.” Iqbal, 129 S. Ct. at 1948.[2] Deliberate indifference includes “indifference ... manifested by prison doctors in their response to the prisoner's needs or by

---

[2] Accord Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (“A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior”).

prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Erickson v. Pardus, 551 U.S. 89, 90 (2007) (quoting Estelle, 429 U.S. at 105) (footnotes and internal quotation marks omitted). To establish deliberate indifference, a plaintiff must show that the defendant was subjectively aware of the unmet serious medical need and failed to reasonably respond. Farmer, 511 U.S. at 837; Natale, 318 F.3d at 582. "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Deliberate indifference may be found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197.

The instant Complaint indicates that Plaintiff suffers from neoplasm malignant bone marrow of the lumbar spine, mild levoscoliosis of thoracic spine, back disorder, dermatophytosis of the foot, obesity, and high cholesterol. This Court will assume without deciding that Plaintiff has serious medical needs under the Eighth Amendment.[3] However, Plaintiff's submissions do

---

[3] A neoplasm is a new growth of tissue, which may be benign or malignant (cancerous). See National Cancer Institutes, National Cancer Institute, Glossary, http://science.education

(continued...)

not assert facts showing that any individual defendant, i.e., Doctors Hochberg, Godinsky and John Does, violated his Eighth Amendment rights by being deliberately indifferent to his various conditions. Plaintiff asserts that defendants sent him for an MRI of the lumbar spine in 2008, the MRI "suggested hyperplastic vertebral b one marrow" (Docket Entry #1 at 5), defendants repeatedly conducted follow-up medical evaluations, defendants repeatedly treated Plaintiff with pain medication, defendants admitted Plaintiff to the institutional infirmary for five days, and defendants prescribed blood tests and physical therapy. Plaintiff maintains that prescribed physical therapy "failed" (id. at 6), and defendants "failed to follow-up on the assessment recommendation [of] medical consultants concerning the necessary care and treatment to Plaintiff's back" (id.). Without providing further factual elaboration, Plaintiff concludes that defendants were deliberately indifferent by "(1) failing to follow-up on the recommendations of medical consultants concerning the care and treatment of Mr. Rogers' back; (2) allowing prescriptions for pain medication and high cholesterol to lapse; (3) allowing medical orders, restricting Rogers' housing to first floor, to be disregarded and (4) failing to take appropriate action when Rogers filed Administrative grievances/complaints." (Docket Entry #1, p. 5.)

However, Plaintiff's submissions do not show that defendants intentionally refused to provide any specific medically necessary care. In fact, it is clear from Plaintiff's allegations that officials prescribed various medications and sent Plaintiff for MRI testing, blood tests, physical

---

[3](...continued) .nih.gov/supplements/nih1/cancer/other/glossary/act1-gloss4.htm (Jan. 24, 2011). Levoscoliosis is abnormal curvature of the spine to the left. See National Institutes of Health, http://vsearch.nlm.nih.gov/vivisimo/cgi-bin/query-meta?query=scoliosis&v%3Aproject=nlm-main-website (Jan. 24, 2011). Dermatophytosis is a superficial fungal infection caused by dermatophytes. See http://emedicine.medscape.com/article/787217-overview (Jan. 24, 2011).

therapy and numerous follow-up evaluations. Plaintiff does not specify what tests or recommended treatment defendants allegedly refused to provide, and this failure to assert facts substantiating Plaintiff's conclusion that defendants failed to provide recommended treatment is deficient under the Iqbal standard.[4] "To show deliberate indifference, a plaintiff must do more than simply allege medical malpractice or express disagreement regarding the treatment provided." Watkins v. Cape May County Correc. Center (Medical Dept.), 240 Fed. App'x 985, 986 (3d Cir. 2007) (citing Monmouth County Corr. Inst. Inmates, 834 F. 2d at 346). As the Supreme Court explained:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . .

Estelle, 429 U.S. at 107.

In this case, Plaintiff's medical care claim fails because the facts alleged in the Complaint do not substantiate that any individual defendant was deliberately indifferent; rather, Plaintiff's allegations show that he was dissatisfied with the treatment provided by defendants. But such dissatisfaction with medical care does not constitute deliberate indifference.[5] See Rhines v.

---

[4] The Eighth Amendment does not guarantee freedom from pain or a cure for every ailment during incarceration.

[5] Plaintiff's claims against UMDNJ, CMS and the other named entities also fail. A corporate entity providing medical care to inmates cannot be found liable under § 1983 for the negligent acts of its employees. See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691-92 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583 (3d Cir. 2003). In order for an entity such as CMS to be liable, an inmate must show that there was "a relevant . . . policy or custom and that the policy caused the constitutional violation." Natale, 318 F.3d at 584. Because Plaintiff's allegations do not assert violation of his Eighth Amendment
(continued...)

Bledsoe, 2010 WL 2911628, *2 (3d Cir. July 27, 2010) ("Rhines' claims against defendants are based on his belief that he should have been treated in a more timely manner and through the immediate use of an MRI. The record shows that Rhines was afforded continual medical care for his knee injury, and that prison staff treated and evaluated him on each visit. Therefore, we agree with the District Court that Rhines cannot show defendants possessed the requisite mental state necessary to prove an Eighth Amendment violation. Moreover, Rhines' disagreement about his course of treatment, namely, that an MRI should have been immediately ordered, does not demonstrate the defendants were deliberately indifferent to his medical needs. Mere disagreement as to the proper medical treatment will not support a claim under the Eighth Amendment"); Ali v. Howard, 353 Fed. App'x 667, 671 (3d Cir. 2009) ("the dispute between Ali and defendants involves the extent and course of his treatment, which does not state a constitutional violation under the Eighth Amendment"); Lewal v. Ali, 289 Fed. App'x 515, 517 (3d Cir. 2008 ("Here, Lewal's disagreement as to the proper medical treatment he should receive does not support an Eighth Amendment claim"); Ham v. Greer, 269 Fed. App'x 149, 1151 (3d Cir. 2008) (Ham's primary dispute, in essence, is that he did not receive the kind or quality of treatment that he would have preferred. This simply does not rise to the level of a violation of a constitutionally protected right"); Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir.2004) ("mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation); Inmates of Allegheny Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) ("Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of

---

[5](...continued)
rights, he has not shown that his constitutional rights were violated by the execution of a custom or policy of the named entities.

treatment ... (which) remains a question of sound professional judgment.' " (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977)). Accordingly, this Court will dismiss Plaintiff's § 1983 medical care claim for failure to state a claim upon which relief may be granted.

However, Plaintiff's allegations do not foreclose the possibility that he may be able to assert facts stating a § 1983 deliberate indifference claim under the Iqbal standard. This Court will therefore grant Plaintiff 30 days leave to file an amended complaint naming individual defendants and "contain[ing] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002).

## IV. CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's application to proceed in forma pauperis and dismisses the Complaint without prejudice to the filing of an amended complaint within 30 days.

/s/ Jose L. Linares
**JOSE L. LINARES, U.S.D.J.**

Date: February 1, 2011